**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| MOON FENTON, M.D., | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE WEST CLINIC, PLLC, f/k/a THE | ) |
| WEST CLINIC, PC, d/b/a WEST CANCER | ) |
| CENTER; WEST LEASECO, LLC; WEST | )     No. 2:21-cv-02790-SHL-tmp |
| DESOTO PARTNERS, LLC; WEST | ) |
| UNION PARTNERS, LLC; WEST WOLF | ) |
| RIVER PARTNERS, L.P., f/k/a WEST | ) |
| WOLF RIVER PARTNERS, LLC; WEST | ) |
| CAPITAL, LLC; WEST CLINIC HOLDCO, | ) |
| PC; WEST EQUITY, LLC; and WEST | ) |
| PARTNERS, LLC, | ) |
|     Defendants. | ) |

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY**
**JUDGMENT**

Before the Court are Defendant The West Clinic, PLLC, f/k/a The West Clinic, PC, d/b/a

West Cancer Center ("The West Clinic") and related entities' (collectively the "Defendants")

Motion for Summary Judgment, (ECF No. 50), Plaintiff Moon Fenton, M.D.'s ("Dr. Fenton")

Response, (ECF No. 53), and Defendants Reply, (ECF No. 59).  Defendants seek summary

judgment on all contract and tort claims asserted by Dr. Fenton, contending that there is no

genuine issue of material fact and that they are entitled to judgment as a matter of law.  (ECF No.

50 at PageID 360.)

Specifically, Defendants argue that they are entitled to summary judgment on Dr.

Fenton's breach of contract claims because:  (1) the alleged oral contract is unenforceable under

the Statute of Frauds, and (2) there is no evidence of breach.  (<u>Id.</u>)  As for the tort claims,

Defendants contend that the claims are time-barred by the applicable statute of limitations.  (<u>Id.</u>

at PageID 361.)

In response, Dr. Fenton argues that Defendants' Motion should be denied as there are genuine issues of material fact that make summary judgment inappropriate.  (ECF No. 53 at PageID 890.)  Specifically, Dr. Fenton contends that there are factual disputes as to whether the Statute of Frauds bars her breach of contract claim, whether there was a breach, and whether her tort claims are time-barred.  (Id. at PageID 892-93.)

For the reasons explained below, the Court finds there are genuine disputes of material fact as to Dr. Fenton's contract and tort claims.  Therefore, the Court **DENIES** the Motion.

## **FACTUAL BACKGROUND[1]**

In 2012, Dr. Fenton began her employment with The West Clinic, a cancer center based in Germantown, Tennessee, as a Hematology Medical Oncologist.  (ECF No. 54 at PageID 908.) She was employed by The West Clinic until her voluntary resignation in 2020.  (Id.)

After conversations with The West Clinic's CEO, Erich Mounce, and President, Dr. Lee Schwartzberg, Dr. Fenton agreed to "buy-in" to The West Clinic and become a shareholder. (ECF No. 53 at PageID 890.)  These conversations began in late 2011, when Dr. Fenton was being recruited to The West Clinic, and continued until 2014.  (Id.)  During these conversations, Mr. Mounce represented to Dr. Fenton that, following her buy-in, she would become part owner of The West Clinic and its related entities and would have the same ownership stake and voting rights as the other shareholders.  (Id. at 890-91.)  Dr. Fenton contends that Mr. Mounce stated that the cost of the buy-in was $500,000 and, that upon termination, she would receive her buy-in back as a buy-out.  Dr. Fenton further contends that the cost of the buy-in would be taken out of

---

[1] The following facts are taken from the Parties' undisputed facts.  The Court only discusses the facts that are pertinent to the Motion.  Any disputes of fact are noted.

her bonuses after she became a shareholder by deducting her bonus in a depreciating manner beginning with 80% in the first year, 60% in the second year, 40% in the third year, and 20% in the fourth year.  (ECF No. 54 at PageID 908-09.)  Defendants contend that all bonuses were discretionary and that there were no deductions for any purported buy-in made from Dr. Fenton's bonuses.  (ECF No. 28 at PageID 246.)

The Parties dispute whether the total buy-in amount could be paid within a year or whether the payments had to occur over five years.  (Id. at PageID 909.)  Dr. Fenton further alleges that the bonus deductions were supposed to stop once $500,000 had been deducted from her bonus income.  (Id.)  Defendants dispute that bonus deductions were capped at $500,000.  (ECF No. 60 at PageID 938.)  They allege that shareholder bonus calculations were discretionary and that the deductions from bonus income did not cover the cost of the buy-in.  (Id. at PageID 939.)  According to Defendants, Plaintiff was paid only the portion of the discretionary bonus calculation that represented the vesting percentage based on the year of her shareholder tenure.  (Id.)

There was no written agreement or contract containing the terms Dr. Fenton has alleged were orally promised to her as a new shareholder.  (Id. at PageID 909.)  She alleges that, on multiple occasions, she asked The West Clinic's legal counsel to put the terms of her buy-in agreement into writing, but that The West Clinic never provided her with a written agreement or contract.  (Id.)

Dr. Fenton was voted in as a shareholder in January 2015 and thereafter began receiving bonuses as a shareholder.  (Id.)  In 2016, she had several meetings with Mr. Mounce and other members of The West Clinic's executive staff to discuss her bonus calculation.  (ECF No. 54 at PageID 910.)  Following a December 2016 meeting, Dr. Fenton emailed Mr. Mounce to ask for

3

an explanation of her bonus calculation for that year.  (Id.)  Mr. Mounce responded by e-mail with a spreadsheet that showed her 2016 bonus calculation, with the note "for our discussion." (Id. at PageID 910-11.)  Thereafter, in February 2017, Dr. Fenton and Mr. Mounce had a phone conversation in which Mr. Mounce provided an explanation of Plaintiff's 2016 bonus calculation.  (Id. at PageID 911.)  During that call, Mr. Mounce stated that $448,000 had been deducted from her 2016 bonus. (Id.)  The Parties dispute whether this was the first time that Dr. Fenton would have known how much was deducted from her 2016 bonus.  (Id. at PageID 911-12.)

Based on the 80/60/40/20% vesting schedule, The West Clinic paid Dr. Fenton the following amounts and retained the following amounts from her bonuses from 2015 until 2019 (ECF No. 60 at PageID 942):

|  | Percent & Bonus Paid to Fenton | Percent & Bonus Retained |
|---|---|---|
| 2015 | 20%:  $30,632.17 | 80%:  358,931.46 |
| 2016 | 40%:  $299,670.67 | 60%:  $448,346.35 |
| 2017 | 60%:  $392,843.45 | 40%:  $261,895.64 |
| 2018 | 80%:  $441,994.11 | 20%:  $110,498.52 |
| 2019 | $0[2] | N/A |
| **Total** | **$1,165,140.40** | **$1,179,671.97** |

Dr. Fenton voluntarily terminated her employment with The West Clinic, effective July 31, 2020.  (ECF No. 60 at PageID 943.)  After giving notice of her resignation, she requested that Defendants pay her back the $500,000 buy-in and inquired about the buy-out of

---

[2] There were no bonuses paid to shareholders in 2019.  (ECF No. 60 at PageID 942, n. 2.)

her ownership interest.  (Id. at PageID 943-44.)  Defendants refused to pay her the $500,000 buy-in and did not pay her anything for her ownership interests in The West Clinic and its related entities.  (Id. at PageID 945.)  Defendants dissolved Dr. Fenton's ownership interest in the entities at the time of her termination.  (Id.)

At the time Dr. Fenton gave notice of her resignation, she had an ownership interest in six entities:  The West Clinic, PLLC, West Holdco, PC, West Capital LLC, West Desoto Partners, LLC, West Union Partners, LLC, and West Equity, LLC.  (ECF No. 53 at PageID 897.)  The applicable operating and shareholder agreements for the six entities set forth various methodologies to determine the price to be paid to a departing member.  (Id.)  The Operating Agreement of The West Clinic, PLLC and the Shareholder Agreement of West Holdco, PC state that, upon the occurrence of a "Triggering Event," the regularly employed accountant of the company shall calculate a purchase price based on a specific methodology.  (Id. at PageID 898.)  The Operating Agreements for West Union Partners, LLC, West Wolf River Partners, LLC, and West Desoto Partners, LLC state that, upon the occurrence of a "Precipitating Event," "the Company shall cause a determination of the Fair Value of the Membership interest," and "the Company. . . shall thereupon purchase . . . the Selling Member's Membership Interest . . . for fair cash at the Fair Value of Membership Interest."  (Id. at PageID 900.)  These three agreements define Fair Value of Membership Interest as the greater of (i) $100; or (ii) that amount which is equal to the Book Value of the Member's Percentage Interest as determined by the Company's regularly employed accountant.  (Id.)

Finally, the West Capital, LLC Operating Agreement does not state that an outgoing member has to sell their interest or that West Capital, LLC must purchase their ownership interest.  (Id. at PageID 898.)  However, the agreement defines Fair Market Value as "the fair

value of such assets . . . as between a willing buyer and a willing seller in an arm's length transaction . . . determined in good faith by the Board, acting reasonably, and taken into account all relevant factors determinative of value . . ."  (Id. at PageID 901.)

The Parties dispute whether these entities had any value or net worth at the time of Dr. Fenton's termination.  According to Reid Evensky, The West Clinic's Legal Counsel, Defendants' regularly employed accountants calculated that the entities had no value or net worth at the time.  (ECF No. 54 at PageID 912.)  Dr. Fenton disputes that Defendants' regularly employed accountants ever made such a determination.  (Id. at PageID 912-13.)  She further alleges that, when she resigned, at least some of the related entities had some value or net worth. Specifically, she argues that her 2020 IRS Schedule K-1 forms suggest that her interests in The West Clinic had some value.  (ECF No. 53 at PageID 898.)  She further alleges, and Defendants concede, that West Capital, LLC, the controlling partner of West Wolf River, LP, owned an office building that it purchased in February 2019 for $51 million dollars.  (ECF No. 60 at PageID 945-46.)

Dr. Fenton filed this Complaint on December 22, 2021.  (ECF No. 1.)  She seeks damages for breach of contract for deducting more than $500,000 from her bonuses for the buy-in, for not returning the buy-in amount paid upon termination of her employment, and for breaching the operating agreements that define how ownership interests were to be disposed of following termination.  (Id. at PageID 24-25.)  The Complaint also includes various tort claims against Defendants, including conversion, negligent misrepresentation, intentional misrepresentation, promissory fraud, fraudulent concealment, fraud by omission, and

constructive/resulting trust.  (Id. at PageID 25-28.)

## ANALYSIS

As explained below, there are genuine disputes of fact that would permit a jury to return a verdict in favor of Dr. Fenton as to her breach of contract and tort claims.[3]  Therefore, Defendants are not entitled to summary judgment.

### I.      Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must view the facts in the record and reasonable inferences that can be drawn from those facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once a properly supported motion for summary judgment has been filed, the party opposing summary judgment must show that there is a genuine dispute of material fact by pointing to evidence in the record or argue that the moving party is not entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a), (c)(1).  "When confronted with a properly supported Motion for Summary Judgment, the party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact."  Cloverdale Equipment Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).  The opposing party "cannot rest solely on the allegations made in [his] pleadings."  Everson v. Leis, 556 F.3d 484, 496 (6th Cir. 2009) (quoting Skousen v. Brighton High Sch., 305 F.3d 520, 527 (6th Cir. 2002)).

---

[3] The Parties agree that Tennessee substantive law governs this diversity action.  (See ECF 50-1 at PageID 368, n. 1; ECF No. 53 at PageID 894.)

A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The court's role is not to weigh evidence or assess the credibility of witnesses, but simply to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  <u>Kroll v. White Lake Ambulance Auth.</u>, 763 F.3d 619, 623 (6th Cir. 2014) (quoting <u>Anderson</u>, 477 U.S. at 251–52).

## II.   Breach of Contract

Defendants argue that they are entitled to summary judgment on Dr. Fenton's breach of contract claim because:  (i) the alleged oral contract is unenforceable under the statute of frauds, and (ii) Dr. Fenton failed to establish a breach of the operating and shareholder agreements.  The Court discusses each argument in turn.

### A.  Statute of Frauds

In her Complaint, Dr. Fenton alleges that she had an oral contract with Defendants wherein, in exchange for becoming a shareholder in The West Clinic, she would be (1) paid a salary with bonuses calculated the same as other shareholders, (2) allowed to buy-in to The West Clinic for $500,000, which would be deducted from her bonuses, and (3) re-paid the amount of her buy-in were she to terminate her employment with The West Clinic.  (ECF No. 1 at PageID 24.)  According to Dr. Fenton, Defendants breached the terms of the oral contract by (1) deducting more than $500,000 from her bonuses, (2) not calculating her bonuses the same as other shareholders, and (3) not paying her back the amount of her buy-in when she voluntarily terminated her employment at The West Clinic.  (<u>Id.</u>)  Defendants seek summary judgment,

arguing that the alleged oral contract is not enforceable under the statute of frauds.  (ECF 50-1 at PageID 368.)

To prevail on a breach of contract claim under Tennessee law, a plaintiff must prove: (i) the existence of an enforceable contract, (ii) nonperformance that amounts to a material breach, and (iii) damages that were caused by the breach.  ARC LifeMed, Inc. v. AMC-Tenn., Inc., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005).  Contracts need not be in writing to be enforceable.  Burton v. Warren Farmers Coop., 129 S.W.3d 513, 521 (Tenn. Ct. App. 2002).  However, under Tennessee's statute of frauds, certain "contracts are not considered valid and enforceable unless they are memorialized in a writing."  Rhynes v. Bank of Am., No. 12–2683, 2013 U.S. Dist. LEXIS 42713, at *24-5 (W.D. Tenn. Mar. 26, 2013) (citing Shah v. Racetrac Petroleum Co., 338 F.3d 557, 573 (6th Cir.2003)).  Specifically:

> [n]o action shall be brought . . . upon any agreement or contract which is not to be performed within the space of one (1) year from the making of the agreement or contract[,] unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith or some other person lawfully authorized by such part.

Tenn. Code Ann § 29-2-101(a)(5).

However, because Tennessee courts generally try to uphold contracts rather than defeat them, the statute of frauds is construed "very narrowly."  Birdwell v. Psimer, 151 S.W. 916, 919 (Tenn. Ct. App. 2004).  Tennessee courts "have declined to construe a contract to require performance over more than one year if to do so would render the contract unenforceable because of the statute of frauds."  Price v. Mercury Supply Co., 682 S.W.2d 924, 932 (Tenn. Ct. App. 1984).  In determining whether an agreement falls within the statute of frauds' one-year provision:

> The question is not what the probable, expected, or actual performance of the contract may be, but whether, according to the reasonable interpretation of its terms, it <u>requires</u> that it should not be performed within the year.  Unless the court, looking at the contract in view of the surroundings, can say that in no reasonable probability can such agreement be performed within the year, it is its duty to uphold the contract.

<u>Id.</u> (emphasis added) (citing <u>Boutwell v. Lewis Bros. Lumber Co.</u>, 182 S.W.2d 1, 3 (Tenn. Ct. App. 1944).  For this reason, "there must be evidence to demonstrate that the parties specifically agreed that the contract absolutely would not be performed within one year for it to run afoul of the statute of frauds."  <u>Guardsmark (Puerto Rico), LLC v. Miramar Real Est. Mgmt., Inc.</u>, No. 2:08-CV-2317, 2008 WL 11321178, at *4 (W.D. Tenn. July 30, 2008) (quoting <u>Birdwell</u>, 151 S.W.3d at 919 (citations omitted).

Defendants first contend that it is undisputed that the alleged buy-in agreement was not in writing.  (ECF No. 50-1 at PageID 369.)  Moreover, Defendants argue that the terms of the buy-in agreement[4] could not be fully performed within one year as, according to Dr. Fenton, her $500,000 buy-in was to be deducted from her bonuses over a five-year period based on the 80/60/40/20% vesting schedule.  (<u>Id.</u>)  In addition, because the alleged oral contract was formed when Dr. Fenton first interviewed with The West Clinic at the end of 2011, rather than in 2015 when Dr. Fenton agreed to the buy-in, Defendants argue that the statute of frauds prevents its enforceability.  (<u>Id.</u>)  Under this theory, Dr. Fenton entered into a single contract that contained the terms of her employment before she became a shareholder as well as the terms of the buy-in.  According to Defendants, Dr. Fenton testified that she would not be able to buy-in and become a shareholder until she completed two years of employment at The West Clinic.  (<u>Id.</u>)  Defendants

---

[4] Defendants appear to dispute all of the alleged terms of the buy-in agreement, but argue that summary judgment is appropriate because Dr. Fenton's version of the agreement is subject to the statute of frauds.

therefore argue that it was impossible for the buy-in agreement to be performed within one year. (Id.)

In response, Dr. Fenton concedes that the buy-in agreement was never memorialized in writing, but argues that the statute of frauds does not apply because the contract was capable of being performed within a year. (ECF No. 53 at PageID 893-94.) She contends that, although the Parties agreed to a five-year vesting schedule, the bonus deductions were capped at $500,000 and she could have met that cap within a year depending on the size of her bonus. (Id. at PageID 893-94, n. 5.) While Dr. Fenton argues that, in the first year of the contract, The West Clinic deducted $358,931 for the buy-in, or 80% from her bonus, the entire $500,000 could have been paid in her first year as a partner if her bonus for that year had been larger. (Id.) Because the contract could have been performed within a year, she concludes that it is not subject to the statute of frauds. (Id.)

As to the question of when the contract was formed, Dr. Fenton does not directly address Defendants' argument that it was formed in 2011 as Defendants raise this argument for the first time in their Reply. However, based on her filings, Dr. Fenton appears to take the position that the buy-in agreement did not take effect until she became a shareholder in January 2015. She contends that she agreed to the buy-in following conversations with Mr. Mounce and Dr. Schwartzberg. (ECF No. 53 at PageID 890.) While these conversations began in late 2011, when Dr. Fenton was being recruited to The West Clinic, she states that they continued until late summer 2014, shortly before she became a shareholder in January 2015. (Id.)

To begin, there are genuine disputes of material fact as to the year the buy-in agreement was formed. First, there is no support in the record for Defendant's assertion that Dr. Fenton entered into an employment agreement with The West Clinic in 2011. Second, even if the

employment contract was formed in 2011, there would be a mixed question of fact and law as to the relationship between the 2011 employment contract and the 2015 buy-in contract. For example, the trier of fact would need to decide whether the 2015 buy-in agreement was part of the 2011 employment contract, a modification of it, or an entirely distinct contract.

Moreover, Dr. Fenton has put forth sufficient evidence to create a genuine dispute of material fact as to her ability to complete the buy-in contract within a year. The Parties agree that there was to be an 80% deduction from Dr. Fenton's bonus in year one, and that the percentage deduction was to decrease by 20% in each subsequent year. However, the Parties dispute whether these deductions were part of the buy-in and whether the buy-in was capped at $500,000, and nothing in the record suggests that there was an agreement as to a dollar amount cap on Dr. Fenton's yearly contribution towards the buy-in. Therefore, in line with Dr. Fenton's allegation, it would have been possible for her to complete the buy-in within a year, depending on the size of her bonus that year. For example, if Dr. Fenton's pre-deduction bonus in 2015 was $625,000, then The West Clinic would have retained 80% of the bonus, resulting in $500,000 applied to the buy-in. The Parties agree that in 2016 Dr. Fenton had a pre-deduction bonus of $748,017.02, (see ECF No. 60 at PageID 942), so, at the very least, there was a "reasonable probability" that she could have earned enough to complete the buy-in within a year. Price, 682 S.W.2d at 932.

Viewing the evidence in the light most favorable to Dr. Fenton, as the Court must do, it is not clear that the parties "specifically agreed that the contract absolutely would not be performed

within one year," such that the statute of frauds would bar the enforcement of the buy-in agreement as a matter of law.[5]  Guardsmark, No. 2:08-CV-2317 at *4.

### B.  Breach of Operating and Shareholder Agreements

In addition to the breach of the buy-in agreement, Dr. Fenton alleges that Defendants breached the shareholder and operating agreements by failing to calculate and pay the fair value of her ownership interests upon her voluntary termination.  (ECF No. 1 at PageID 24.) Defendants argue that summary judgment is appropriate because she failed to establish a breach of those agreements.  (ECF No. 50-1 at PageID 369.)  In support, Defendants argue that their regularly employed accountant calculated that The West Clinic and its related entities had no value at the time of Dr. Fenton's termination, and that she was owed nothing.  (Id.)

In response, Dr. Fenton argues that disputes of material fact as to the value of her interests in The West Clinic entities at the time of her termination defeat summary judgment. (ECF No. 53 at PageID 903.)  Specifically, Dr. Fenton contends that her ownership interests were not worthless, as evidenced by her 2020 K-1 forms.[6]  (Id. at PageID 898.)  Alternatively, as to West Capital, LLC, which bought an office building in 2019, Dr. Fenton argues that a reasonable jury could determine that Defendants did not act in good faith in determining that her ownership interest in that entity was worthless.  (Id. at PageID 903.)

---

[5] In their briefings, the Parties discussed at length whether the partial performance or equitable estoppel exception to the statute of frauds may apply.  (See ECF No. 53 at PageID 893-96; ECF No. 59 at PageID 927-29.)  Given the Court's conclusion here, there is no need to address whether an exception to the statute of frauds applies.

[6] Defendants oppose the introduction of facts relating to Dr. Fenton's K-1 for the first time in her Response and argue that those statements are not determinative of the entities' value.  (ECF No. 59 at PageID 930-31.)  While their ultimate evidentiary value is for another day, the presence of other disputed facts carries the day here.

There are genuine disputes of material fact related to whether Defendants breached the operating and shareholder agreements. First, there is a dispute as to whether Defendants' regularly employed accountant ever calculated Dr. Fenton's ownership interest at the time of her termination. (ECF No. 54 at PageID 912-13.) Moreover, three of the operating agreements state that an outgoing shareholder is to receive the greater of "(i) $100; or (ii) that amount which is equal to the Book Value of the Member's Percentage Interest as determined by the Company's regularly employed accountant." (ECF No. 53 at PageID 900.) Therefore, even if Dr. Fenton's interests were worthless, per the terms of the three operating agreements, she arguably should have received a total of $300 for her ownership interests in West Union Partners, LLC, West Wolf River Partners, LLC, and West Desoto Partners, LLC. Dr. Fenton points to evidence that indicates she was not even paid that amount, thus creating a dispute as to whether a breach occurred.

    Furthermore, there is a genuine dispute over the value of The West Clinic entities at the time of Dr. Fenton's termination. Defendants contend that their accountants calculated Dr. Fenton's interests to be worthless. However, the sole evidence in support of this conclusion is its legal counsel's deposition testimony. While Defendants may be right about the probative value of Dr. Fenton's K-1 statements, Defendants' evidence—self-serving testimony from its own agent without any reference to the documents or methodology used to make its $0 valuation—is insufficient to establish a one-sided dispute supportive of summary judgment. Furthermore, as Dr. Fenton argues, a jury could determine that Defendants assessment of her ownership interest in West Capital, LLC was not made in good faith or reasonable given that entity's acquisition of a $51 million office building.

Dr. Fenton has presented evidence that would permit a reasonable jury to return a verdict in her favor on her breach of contract claim, and the breach of contract claim is not barred by the statute of frauds as a matter of law.  Therefore, summary judgment is not appropriate as to Dr. Fenton's breach of contract claim.

### III.    Tort Claims

Defendants also argue that Dr. Fenton's seven tort claims (Counts II-VIII) are barred by the applicable statute of limitations, thus warranting summary judgment.

The appropriate statute of limitations to be applied here is determined by considering the "gravamen of the complaint."  McFarland v. Pemberton, 530 S.W.3d 76, 112 (Tenn. 2017).  The gravamen refers to the "substantial point, the real purpose, or object of the Complaint."  Redwing v. Catholic Bishop for the Diocese of Memphis, 363 S.W.3d 436, 457 (Tenn. 2012).  The gravamen is determined from the basis from which damages are sought.  Id.

The statute of limitations period begins to run when a cause of action "accrues," or the injury occurs.  Feild v. Graffagnino, 514 F Supp. 2d 1036, 1043 (W.D. Tenn. 2007).  Under Tennessee's "discovery rule," a cause of action accrues when a plaintiff has knowledge of a claim and has actual knowledge of sufficient facts to put a reasonable person on notice they have been injured as a result of the defendant's wrongful conduct.  Redwing, 363 S.W.3d at 459.  Being on notice of the injury is referred to as inquiry notice, such that "[o]nce a plaintiff gains sufficient information to alert a reasonable person of the need to investigate the injury, the limitation period begins to run."  Id.

Here, the Parties agree that Counts II through VIII are actions for injuries to personal property and conversion of personal property, such that these claims are subject to a three-year statute of limitations under Tenn. Code Ann. § 28-3-105.  (See ECF No. 50-1 at PageID 370;

ECF No. 53 at PageID 904.)  Dr. Fenton filed her Complaint on December 22, 2021.  (ECF No.

1.)  Therefore, any action that accrued before December 28, 2018 is barred by the three-year

statute of limitations.

Defendants argue that all of Dr. Fenton's tort claims are time-barred.  According to

Defendants, her claims for Conversion (Count II), Promissory Fraud (Count V), Fraudulent

Concealment (Count VI), and Constructive Trust (VIII) accrued no later than February 2017,

when she learned that more than $500,000 had been deducted from her bonus for her buy-in.

(ECF No. 50-1 at PageID 371.)  First, according to Defendants, these claims are based on Dr.

Fenton's allegations that Defendants wrongfully retained more than $500,000 from her bonuses

for the buy-in.  (Id.)  They then argue that, at the latest, Dr. Fenton learned of these deductions

during a February 2017 phone call with Mr. Mounce when they discussed the calculation of her

2016 bonus.  (Id.)  After learning about her 2016 bonus calculation, Defendants argue that Dr.

Fenton knew, or in the exercise of reasonable care should have known, that the bonus monies not

paid to her exceeded $500,000 in her first two years as a partner.  (Id. at PageID 371-72.)

Defendants argue that Dr. Fenton's remaining tort claims—Negligent Misrepresentation

(Count III), Intentional Misrepresentation (Count IV), and Fraud by Omission (Count VII)—

accrued no later than August 2018.  (Id. at PageID 372.)  Defendants contend that these claims

relate in part to Defendant's alleged misrepresentations about the value of The West Clinic's

assets when Dr. Fenton agreed to the buy-in.  (Id.)  It is undisputed that Dr. Fenton attended an

August 2018 shareholder meeting, during which executive leadership gave a full account of The

West Clinic's assets, including its real estate holdings.  (Id.)  Defendants therefore argue that,

because Dr. Fenton knew about the value of The West Clinic's assets in August 2018, the statute

of limitations for these claims began to run at that time.  (Id.)

In response, Dr. Fenton seems to concede that at least some of her tort claims are barred by the three-year statute of limitations.  She states that, "the tort claims that accrued **prior** to December 22, 2018 are time barred, and in the interest of full candor to this Honorable Court, Dr. Fenton will not argue to the contrary.  However, **all** of Dr. Fenton's tort claims that accrued **after** December 22, 2018, are timely filed."  (ECF No. 53 at PageID 904) (emphasis in original.)

Despite her stated interest in candor to the Court, Dr. Fenton fails to specify which of her tort claims accrued before and after December 22, 2018.  Instead, she argues that her tort claims related to Defendants' refusal to return her buy-in when she left The West Clinic did not accrue until 2020 when she resigned and demanded the return of the money.  (Id. at PageID 905.)  She contends that she did not know that Defendants' prior representations and promises that her buy-in would be returned if she ever left were actually false until they refused to do so upon her demand.  (Id.)  As a result, Dr. Fenton argues that her tort claims related to the return of her buy-in upon termination did not accrue until she gave notice of her resignation in 2020.  (Id.)  Because her tort claims related to the return of her buy-in were filed in 2021, Dr. Fenton concludes that those claims are timely and within the three-year statute of limitations.  (Id.)  However, Dr. Fenton fails to specify which of her tort claims are related to the return of her buy-in.

Dr. Fenton also disputes Defendants' assertion that, in 2016, she knew that more than $500,000 had been withheld from her bonuses.  (ECF No. 54 at PageID 911).  Rather, she contends that the first time she learned of this was while reviewing documents in connection with this lawsuit.  (Id. at PageID 912.)

In a few sentences at the end of their Reply, Defendants argue that all of the tort claims that involve the return of the buy-in are inseparable from Dr. Fenton's allegation that Defendants

wrongfully deducted her bonuses in excess of $500,000. (ECF No. 59 at PageID 932.) Defendants state that, "once she was on inquiry notice for those tort claims involving the alleged buy-in, the limitations period began to run as to all parts of the claim even though she was not fully aware of all of the injuries that would result. Therefore, all of her tort claims, even those related to the return of the buy-in, are time-barred." (Id.) Defendants seem to argue that any claim related to the terms of the buy-in—whether related to the return upon termination or deductions made in excess of $500,000—forms a "single injury" that gives rise to one indivisible claim for damages. See Vaughn v. DP Packaging, Inc., 17 F. App'x 286, 290 (6th Cir. 2001) (citing Potts v. Celotex Corp., 796 S.W.2d 678, 680 (Tenn. 1990)). As Defendants contend that Dr. Fenton knew in 2017 that more than $500,000 had been taken out of her bonuses, Defendants seem to argue that a claim based on the return of the buy-in is based on the same injury and similarly barred by the statute of limitations.

Despite Defendants' contentions, there are genuine disputes of material fact as to whether Dr. Fenton's tort claims are time-barred. On their face, all of Dr. Fenton's tort claims, even those that are primarily based on the amount of the buy-in, at least in part could concern Defendants alleged misrepresentation of the terms of the buy-in as it relates to the return of the money upon termination. Dr. Fenton argues, and Defendants do not dispute, that Dr. Fenton learned of Defendants' refusal to return the buy-in in 2020. Because neither side briefed which factual allegations go to which claims, the Court cannot discern the structure of the claims. As Defendants are moving for summary judgment, they have the burden to show that there is no genuine dispute as to any material fact, see Fed. R. Civ. P. 56(a), but have not done so, given the factual disputes that appear to permeate all the tort claims. In essence, at this stage of the

litigation, there appears to be an injury that accrued after December 22, 2018 to support each of Dr. Fenton's tort claims.

Furthermore, Defendants' "single-injury" argument is unavailing.  Defendants argue that all the tort claims related to the return of the buy-in are indivisible from the claims related to the wrongful bonus deductions.  They contend that, because Dr. Fenton knew in 2017 that more than $500,000 had been taken out of her bonuses, a claim based on the return of the buy-in is based on the same injury and similarly barred by the statute of limitations.  However, based on Defendants' scant briefing of the issue, it is not clear that any claim related to the terms of the buy-in forms a "single-injury" that gives rise to a single indivisible claim.

## CONCLUSION

For the reasons stated above, there are disputes of material fact as to Dr. Fenton's breach of contract and tort claims.  Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment in its entirety.

**IT IS SO ORDERED,** this 18th day of April, 2023.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE